ARMANDO A. MIRANDA, demandante y apelante, *v.* JOSÉ L. PESQUERA, demandado y apelado.

No. 6674.—*Sometido:* Diciembre 10, 1935. *Resuelto:* Diciembre 23, 1935.

*Armando A. Miranda,* por su propio derecho y *Rafael F. Barbosa,* abogado del apelante; *Dubón & Ochoteco,* abogados del apelado.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Es ésta una acción en cobro de honorarios profesionales, iniciada por el abogado Armando A. Miranda contra José L. Pesquera. Alega el demandante que desde enero de 1929 hasta julio de 1930 prestó al Sr. Pesquera sus servicios como abogado, sin percibir remuneración alguna, a pesar de haber requerido de pago al referido demandado. El demandante solicitó una sentencia a su favor por la cantidad de $800. La corte inferior dictó su fallo declarando sin lugar la demanda. Apeló el demandante contra la sentencia dictada, atribuyendo a la corte inferior dos errores que pueden discutirse conjuntamente porque se refieren a la apreciación de la prueba.

La corte de distrito aceptó como probado que el demandante gestionó los asuntos que alega en la demanda, pero sostiene que nunca existió contrato, expreso o implícito, entre Miranda y Pesquera, habiendo actuado el primero a gestiones del Sr. Toral, administrador del segundo, sin que el referido Toral tuviese autorización para contratar a nombre de Pesquera los servicios de un abogado.

La prueba del demandante consistió en su propia declaración y treinta y cuatro documentos: veintiséis copias de cartas gestionando el cobro de alquiler de solares de Pés-

quera, un proyecto de arrendamiento de solar y varias demandas radicadas en la Corte Municipal de Bayamón.

Declara el demandante que allá por el mes de noviembre de 1928, el demandado lo llamó por teléfono desde su oficina en San Juan, para que lo viera al día siguiente en su oficina en Bayamón, en la cual se atienden los negocios de varias urbanizaciones del Sr. Pesquera; que se personó en la oficina al día siguiente a las 10:30 de la mañana, manifestándole Pesquera que hacía más de cuatro meses que estaba tratando de conseguir que su primo Carlos M. Pesquera se hiciera cargo de sus asuntos, pero que no lo había conseguido, y deseaba que él, Miranda, se hiciera cargo de los pleitos de las urbanizaciones y todo lo referente a las mismas; que no se acordó precio alguno por el trabajo; que Pesquera le dijo que no quería demandar sino en casos extremos; que deseaba que él se dirigiera a todos los inquilinos morosos para gestionar el pago de lo debido; que el declarante le dirigió cartas de cobro a veintiséis inquilinos de Pesquera; que como al mes y medio de haber remitido esas cartas lo llamó Pesquera por teléfono solicitando detalles de las gestiones y que él así se lo informó, diciéndole Pesquera que estaba enterado de las cartas, ya que varias personas habían venido a la oficina a pagar; que Pesquera le manifestó que deseaba proceder contra aquellas personas que no hubieran pagado o que se negaran a pagar; que el declarante le manifestó a Pesquera que debían esperar algún tiempo y que él iría a ver a estas personas para gestionar personalmente el pago, y que quedaron los dos conformes en esto; que visitó a cada una de las personas a quienes se le habían remitido las cartas y que muchas de ellas se personaron en la oficina, como Teresa Cortés de Ramírez, que en su presencia pagó parte de su cuenta; que pasaron meses y allá por julio o agosto sólo quedaban ocho o diez personas que no querían pagar; que fué a la oficina de Pesquera y le dijo: "Mire, Pepito, la gente de la urbanización ha pagado, pero hay algunos que no quieren pagar . . . ¿qué usted cree que se debe hacer con

ellos?''; que Pesquera le manifestó: "Pues yo lo que creo es que se debe proceder contra esas personas. En cuanto el márshal los notifique, tú verás si ellos pagan, si no el todo, una buena parte de la deuda. Y efectivamente, yo necesito dinero ahora, así es que ésta es una buena época para demandarlos;" que el declarante le preguntó sobre el pago de los derechos y Pesquera le dijo que iba a ordenar a Toral que le pagara el importe de los derechos en cada caso según le fuera diciendo Miranda; que siguiendo esas instrucciones, radicó en la Corte Municipal de Bayamón siete demandas; que al preguntarle a Pesquera sobre algunas de estas personas antes de demandarlas, Pesquera le decía: "A demandarlo"; que cuando algún demandado pagaba por lo menos la mitad de lo debido, Pesquera le ordenaba que desistiera de ese caso; que Pesquera le consultó sobre el derecho de *homestead,* que pudiesen tener los que tuvieran casas en el solar, y que el declarante estudió esta cuestión; que Pesquera solicitó del declarante que éste preparase un contrato de arrendamiento de solar de tal manera que quedara renunciado el *homestead;* que preparó el contrato antes de embarcar Pesquera para los Estados Unidos; que una tarde se lo encontró en el correo de San Juan y se fué a invitación de Pesquera en el automóvil de éste; que le leyó el contrato en el automóvil y que al llegar a la casa del declarante se detuvo el carro de Pesquera; que serían como las 6:30 o las 7, que ya estaba entre claro y oscuro; que Pesquera dijo que le gustaba mucho el contrato pero que necesitaba leerlo con detenimiento por si tenía que hacer alguna aclaración, enmendarlo o añadirle algo; que a petición de Pesquera le dejó el contrato en su oficina; que como cuatro semanas después se encontró en Bayamón con Pesquera y le preguntó del contrato; que Pesquera le dijo que estaba perfectamente bien; que Pesquera le dijo que quería conservar una copia del contrato, y que el declarante le dijo que se quedara con el que tenía, ya que él tenía copias en su oficina; que le dijo Pesquera al declarante que le iba a dar órdenes a Toral de

que mandara a imprimir el contrato cuando regresara de los Estados Unidos; que Pesquera le dijo que le entregara una copia a Toral; que le entregó a los dos o tres días una copia a Toral; que una tarde, en enero de 1930, se encontró con el Sr. Pesquera en San Juan y le dijo que necesitaba de su ayuda; que Pesquera le dijo: "Pues tú dirás;" que le explicó que se sentía enfermo y que tenía que extraerse las amígdalas y hacerse una operación en la nariz y que necesitaba dinero; que Pesquera dijo: "No hay que hablar . . . no tienes más que pasarte por mi oficina mañana"; que el declarante le dijo que necesitaba como $200 y que Pesquera le dijo: "¡Cómo no!", y que pasara como a las dos de la tarde por su oficina; que al día siguiente, a las dos de la tarde, fué a la oficina del Sr. Pesquera, y no lo encontró; que fué veintidós días consecutivos y nunca encontró al Sr. Pesquera ni tampoco el cheque del Sr. Pesquera para él; que un día fué a buscar al Sr. Pesquera a su casa y su señora le manifestó que él no estaba allí; que como a la media hora vió salir al Sr. Pesquera de su casa y que lo detuvo; que volvió a solicitar del Sr. Pesquera los $200; que Pesquera le dijo que había estado muy ocupado pero que sin falta el próximo miércoles por la tarde estaría en su oficina; que el declarante le manifestó al Sr. Pesquera que si no lo encontraba en la oficina el miércoles no iba a buscarlo más, ya que tenía que irse a la clínica a operar; que volvió a la oficina el miércoles y el Sr. Pesquera no estaba en su oficina; que solicitó el cheque y no había cheque; que fué a la oficina de Pesquera en la urbanización y le preguntó al Sr. Toral si Pesquera le había dejado un cheque y que éste le contestó que no; que se operó; que volvió personalmente donde Pesquera y se lo encontró en la Asociación de Agricultores y le explicó que él había trabajado para él por un período de más de año y medio y quería saber si tenía ideas de pagarle, para si no olvidarse de la cuenta y echarla al olvido; que Pesquera se excusó otra vez diciendo que estaba muy ocupado, que no era que no le quería pagar sino que no tenía tiempo

para nada; que el declarante le dijo que le iba a mandar un estado de cuenta por correspondencia y que le hiciera "un chequecito"; que le dijo que le hubiese pagado en ese mismo día, pero que no tenía la libreta de cheques encima; que le pasó un estado de cuenta por la suma de $790; que se encontró con Pesquera en la calle un día y que éste le dijo que la suma era una exorbitancia; que le explicó que el trabajo de él valía esa suma y mucho más; que le manifestó al Sr. Pesquera que si le hacía un abono consistente saldaría la deuda; que el Sr. Pesquera le dijo que le pusiera eso por escrito y que él aceptó y le envió una carta en ese sentido; que le puso la suma de $500 como un abono consistente; que al encontrarse con el Sr. Pesquera otra vez, éste le dijo que para darle $500 le daba los $790; que el Sr. Pesquera además le dijo que hacía dos o tres meses que ni siquiera se presentaba por la oficina a continuar requiriendo de pago a los deudores; que él le explicó al Sr. Pesquera que desde que él se negó a pagarle los $200 había dejado de trabajarle y que solamente volvería a trabajar cuando le pagara la deuda que tenía contraída con él; que nunca se pusieron de acuerdo en cuanto a los honorarios; que el declarante luego le escribió una carta retirando la oferta del abono consistente e insistiendo en que se le pagara como honorarios la suma completa de $790; que en esta carta lo amenazó por primera vez de llevarlo a los tribunales; que el Sr. Pesquera no le contestó y ni siquiera lo saludaba; que en vista de esta actitud fué que él radicó la presente demanda; que los sellos de rentas internas y todos los derechos de arancel los satisfizo Pesquera por conducto de Toral; que el testigo manifestó a Toral que Pesquera había dicho que debía entregarle el importe de los aranceles en cada caso y que tomara nota, expresándose así: "Pesquera me ha dicho que usted debe entregarme el importe de los aranceles en cada caso y que le tome una nota, y la entregue a él, para él llevar la cuenta."

Eugenio Toral declaró por la parte demandada que era el administrador de los solares de Pesquera; que recibía un

tanto por ciento de las rentas cobradas; que tuvo conocimiento de unas demandas establecidas por el Lic. Miranda en relación con las fincas de las cuales él estaba encargado; que le dió los gastos de los procedimientos al Sr. Miranda, cuyos gastos fueron entregados por él para pagarlos en la corte; que Pesquera no le mandó entregar dinero a Miranda por ese concepto y que lo satisfizo porque en esos cobros estaba su tanto por ciento; que pagaba de su tanto por ciento y "además una parte de ese asunto lo cargaba a gastos generales"; que nunca fué a la oficina el Sr. Miranda a buscar dinero por orden del Sr. Pesquera; que el Sr. Pesquera nunca intervino en el dinero que él le dió a Miranda; que el Sr. Pesquera tuvo conocimiento de esas demandas cuando llegó de los Estados Unidos; que cuando se radicaron las demandas el Sr. Pesquera estaba en los Estados Unidos; que no había contrato con los inquilinos, sino que se usaba un sistema de tarjetas desde el 1919; que el Sr. Miranda le llevó un contrato que le había pedido; que le pidió ese contrato porque para aquel tiempo el Sr. Pesquera pensaba arrendarle todos los solares y el declarante quería saber si podía establecer algo nuevo en el contrato para que fueran más satisfactorios los cobros; que el Sr. Pesquera nunca tuvo conocimiento de esto; que era una cuestión privada entre él y Miranda; que cuando se cobraron cincuenta y pico de dólares debido a las cartas remitidas por el Sr. Miranda, el declarante se los dió a Miranda y le dijo que mientras fuera entrando más dinero se lo iría dando a él; que convino en pagarle al Sr. Miranda de lo que se cobraba; que desistieron de las demandas al llegar el Sr. Pesquera porque Pesquera se lo ordenó rotundamente; que el Sr. Miranda le dijo que Pesquera le había dicho que desistiera de los asuntos; que Pesquera nunca le dijo nada a él; que lo que le dijo Pesquera fué que no le gustaban esos asuntos.

En el contrainterrogatorio declara el Sr. Toral que no puede precisar el tiempo que estuvo el Sr. Pesquera en los Estados Unidos, pero que no fué tanto como nueve meses;

que no sabe cuándo se radicaron las demandas; que no sabe cuándo se desistió de ellas; que no recuerda haber declarado en el caso de Carmen Quintana en la Corte Municipal de Bayamón ante el Juez Ernesto Díaz Arana en 14 de agosto de 1929 como testigo de la parte demandante; que él entregó la prueba a Miranda en el referido caso; que no recuerda haber visto al Sr. Miranda y al Sr. Pesquera hablando sobre el contrato de arrendamiento; que no recuerda que Miranda le dijera que le había entregado una copia del contrato; que Miranda le llevó el contrato a él y que lo tiene; que nunca recuerda haber visto al demandante y al Sr. Pesquera juntos; que Miranda siempre iba a buscar a Pesquera y nunca estaba allí en su oficina; que el demandante le decía que iba a ver si lo encontraba en su casa; que eso ocurrió diversas veces.

El demandado José L. Pesquera declaró mediante deposición tomada en Washington, D. C., que nunca ha solicitado los servicios profesionales del Sr. Miranda; que nunca ratificó o sancionó arrendamiento alguno de servicios profesionales que hubiera hecho Toral con el demandante Miranda; que al regresar de los Estados Unidos se le acercó uno de sus inquilinos lamentándose de que hubiese presentado una demanda contra él; que le manifestó que nunca lo había demandado y nunca había pensado en demandar a ninguno de sus inquilinos; pero que el inquilino le mostró una copia de la demanda en la cual él aparecía representado por su abogado Armando A. Miranda; que inmediatamente fué a ver al Sr. Toral y que éste le informó que por su exclusiva cuenta y por el interés que tenía en los cobros había convenido con el Sr. Miranda en que le escribiera algunas cartas a inquilinos morosos, pero siempre entendiéndose que las gestiones del Sr. Toral no habrían nunca de pasar a radicar demandas ni establecer acciones de ninguna clase; que dió los pasos necesarios para desistir de esas acciones judiciales; que nunca fué su propósito demandar a esos inquilinos y que ésta no ha sido su costumbre como lo demuestran los récords

de la Corte Municipal de Bayamón; que sus abogados en esa fecha eran Dubón & Ochoteco.

Esta es sustancialmente la prueba que tuvo ante sí la corte inferior para decidir si los servicios prestados por el demandante deben ser satisfechos o no por el demandado Pesquera. Como hemos visto, la prueba testifical se reduce a tres testigos: Armando Miranda, Eugenio Toral y José L. Pesquera. El primero expone con lujo de detalles las gestiones que llevara a cabo a nombre del último. Que estos trabajos fueron realizados es cosa que no admite dudas. Lo demuestra la prueba de ambas partes y lo reconoce la corte inferior al establecer sus conclusiones. También se ha demostrado que en algunos de estos trabajos se obtuvieron los resultados apetecidos. La única cuestión a decidir es si las referidas actividades estuvieron o no autorizadas por José L. Pesquera. El demandante cuenta en su abono con su propio testimonio, detallado y minucioso, la presunción a su favor de que actuó a nombre del demandado y los servicios prestados. Para rebatir esta prueba ofreció el demandado su propio testimonio, obtenido por deposición, y la declaración de Eugenio Toral, prestada ante la corte sentenciadora. Este último testigo declara que contrató exclusivamente a su nombre los servicios de Miranda y que convino en pagarle los honorarios y los gastos de los procedimientos en los tribunales con el tanto por ciento que le correspondía de las rentas de los solares "y además una parte de ese asunto lo cargaba a gastos generales." De modo que el Sr. Toral, agente cobrador exclusivamente según declara el Sr. Pesquera, se permitía el lujo de contratar un abogado y satisfacer los gastos de arancel utilizando el 10 por ciento que según su propia declaración percibía de las rentas. Lo que dice el testigo no puede inspirarnos confianza. Si hay algo de verdad en sus palabras es ciertamente aquella parte que se refiere a los pagos que cargaba a gastos generales. El Sr. Pesquera nos dice que Eugenio Toral le informó que por su exclusiva cuenta y por el interés que tenía en los cobros había convenido con Mi-

randa que éste escribiera algunas cartas a cierto número de inquilinos morosos por lo cual Toral pagaría a Miranda cierto tanto por ciento sobre las sumas que se cobraban por medio de las citadas cartas, pero siempre entendiéndose que las gestiones de Miranda no habrían nunca de pasar a radicar demandas ni establecer acciones de clase alguna. Si Toral produjo este informe al Sr. Pesquera, es indudable que faltó abiertamente a la verdad, porque él tenía conocimiento de los pleitos iniciados ante los tribunales de justicia a nombre del Sr. Pesquera.

El Sr. Toral declara que Pesquera se hallaba en los Estados Unidos cuando se radicaron esas demandas y que tuvo a su regreso conocimiento de las mismas. No obstante, en el contrainterrogatorio nos dice que no sabe cuándo se radicaron las demandas. También afirma Toral que el proyecto de contrato de arrendamiento, del cual le sirvió copia Miranda, fué solicitado por él personalmente, para su uso personal, porque pensaba arrendarle todos los solares a Pesquera y quería hacer un nuevo contrato. Si ésta fué la instrucción que recibió Miranda de Toral, no resulta así del proyecto, donde figura únicamente José L. Pesquera como arrendador, sin hacerse mención del nombre de Eugenio Toral, ni como arrendatario ni en ninguna otra forma. Admite este testigo que vió al demandante varias veces en la oficina de Pesquera y que Miranda, al no encontrarlo allí, le decía que lo iría a buscar a su casa. Estas visitas a Pesquera no dejan de tener alguna significación. Si como sostiene el demandado, Miranda no estaba autorizado para representarlo, parece inexplicable que lo solicitara con frecuencia. Y si Miranda entendió que Toral estaba autorizado para contratar sus servicios a nombre de Pesquera, natural es que al encontrarse con éste le hablara de las gestiones que estaba realizando a su nombre.

Declaró el demandado que estuvo como un mes en los Estados Unidos y que al regresar tuvo conocimiento por primera vez, y por mediación de un inquilino, de las demandas

radicadas por Miranda, y que al enterarse de esto ''dió los pasos necesarios para desistir de esas acciones judiciales.'' No surge exactamente de los autos en qué fecha llegara Pesquera de los Estados Unidos. Lo cierto es, según su propia declaración, que solamente estuvo ausente por espacio de un mes. Si el Sr. Pesquera se hallaba en los Estados Unidos cuando se radicaron las demandas, y su ausencia duró sólo un mes, tendremos que el demandado estuvo en Puerto Rico durante cinco meses y medio en que estaban pendientes los procedimientos judiciales que había incoado el Sr. Miranda a nombre de él. Como ya hemos dicho, el demandado tuvo conocimiento de esos procedimientos al regresar de los Estados Unidos. Las demandas fueron iniciadas a fines de enero de 1929 y aquéllas en que no recayó sentencia aparecen desistidas en 14 de agosto del mismo año. Si las palabras ''al regresar'' significan que el demandado tuvo conocimiento inmediatamente después de su regreso de las actividades de Miranda, resulta raro que esperase cinco meses y medio para ordenar el desistimiento de las mismas. La misma corte de distrito, que falló a favor del demandado, declara que una moción de desistimiento es algo sencillo que se redacta fácilmente y que ''en verdad el demandado debió haber actuado con mayor actividad.'' Los casos fueron desistidos a petición del Sr. Miranda. Si como declara el demandante, Pesquera estaba en Puerto Rico cuando se incoaron las demandas, es extraño que no se enterase de las mismas por conducto de Toral, por sus inquilinos o por cualquier otro medio. Y si se encontraba en los Estados Unidos, no se explica que a su regreso Toral le dijera que las gestiones de Miranda no habían nunca de pasar a radicar demandas ni establecer acciones de clase alguna. Este informe, según el demandado, procede precisamente de su propio administrador o agente, que contrató al abogado, autorizó las demandas y satisfizo el arancel.

Hemos examinado detenidamente la prueba practicada y creemos que no ha quedado rebatida la presunción que favo-

rece al abogado de estar actuando a nombre de la persona que figura como su cliente. La declaración del Sr. Miranda queda, a nuestro juicio, en pie. El testimonio de Toral es muy débil para rebatirla. Basta pesar detenidamente sus palabras para llegar a la conclusión de que de sus labios no surge la verdad. Tampoco ha quedado rebatida la presunción que la ley establece a favor del demandante por la declaración que en Washington prestara el demandado. Siendo ello así, se impone la revocación de la sentencia dictada por la Corte de Distrito de Bayamón, debiendo dictarse otra en su lugar a favor del demandante.

 Queda ahora por determinar la cuantía de los honorarios que deben satisfacerse, tomando como base los documentos presentados y la prueba testifical. Se ha demostrado que Miranda prestó servicios al Sr. Pesquera por un período mayor de un año. De los autos aparecen veintiséis cartas de cobro dirigidas a los varios inquilinos de los solares del Sr. Pesquera. También aparece un proyecto de contrato de arrendamiento de solares, preparado por el demandante. Se presentaron en la corte municipal siete demandas, se obtuvieron cuatro desistimientos, y se dictaron dos sentencias. Las cuantías de las reclamaciones consignadas en estas siete demandas son las siguientes: $54, $55.50, $43.50, $37.25, $30, $53, y $116.25. Declaró también el demandante que gestionó personalmente el cobro de los alquileres debidos.

Entendemos que el demandante tiene derecho a una compensación ascendente a $300, con costas, sin incluir honorarios.